**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**TUCSON**

| | |
|---|---|
| Jason Adam Jensen,<br>Plaintiff,<br><br>v.<br><br>Autism Society of Arizona, et al.,<br>Defendants. | **Case No. CV-25-00241-TUC-JGZ**<br><br>**MOTION FOR RECONSIDERATION OF ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS (DOC. 16) AND REQUEST FOR RELIEF UNDER FRCP 59(e) AND 60(b)**<br><br>**(Oral Argument Requested)** |

## I. INTRODUCTION

Plaintiff Jason Adam Jensen ("Plaintiff"), proceeding *pro se*, respectfully moves this Honorable Court pursuant to Local Rule of Civil Procedure ("LRCiv") 7.2(g), and Federal Rules of Civil Procedure ("FRCP") 59(e) and 60(b), to reconsider its Order dated January 13, 2026 (Doc. 16), which denied Plaintiff's Application to Proceed *In Forma Pauperis* ("IFP") and ordered payment of filing fees.

Reconsideration is warranted because of **(1) new facts** regarding Plaintiff's immediate financial liabilities—specifically significant medical/dental debts incurred just prior to the Order—and **(2) manifest error** in the Court's factual determination that Plaintiff's food expenses are "discretionary" and that Plaintiff has no other debts. New evidence demonstrates that the Court's assumption regarding the cost of basic nutrition is mathematically impossible in the current economic market, and the Court's own records contradict its finding on Plaintiff's debt load.

## II. LEGAL STANDARD

### A. District of Arizona Local Rule 7.2(g)

LRCiv 7.2(g)(1) provides that a court will grant a motion for reconsideration upon a "showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence."

### B. "Necessities of Life" Standard

The Supreme Court has held that an affidavit is sufficient if it states that the person "cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948). Food is a primary necessity of life.

## III. ARGUMENT

### A. New Facts: Immediate Medical Insolvency (Exhibit A)

The Court's Order (Doc. 16) was entered on January 13, 2026. However, on January 6, 2026—only one week prior—Plaintiff incurred significant and necessary dental expenses that fundamentally altered his financial landscape.

As evidenced by the Treatment Case Plan attached hereto as **Exhibit A**, Plaintiff has been assessed a "Patient's Portion" of liability totaling **$3,700.00** for necessary dental procedures, with an immediate balance due of **$216.00** for the first visit alone. This liability was not reflected in the financial affidavit originally submitted, as it did not exist at that time. Requiring Plaintiff to pay $405.00 in court fees while facing a $3,700.00 medical debt for essential healthcare constitutes a manifest hardship.

**B. Manifest Error: The "Discretionary" Food Budget Fallacy (Exhibit B)**

The Court denied IFP status largely on the finding that Plaintiff's $1,200 monthly food expense is "discretionary spending beyond strict necessity." This finding is factually incorrect and relies on outdated or unrealistic poverty guidelines that do not reflect current market realities for a single adult with dietary needs.

**1. Mathematical Impossibility of the Court's Implied Budget**

The Court implies Plaintiff should survive on a fraction of his current food spending (likely referencing the USDA "Thrifty" plan of ~$300/month). This assumption is demonstrably false in the current economy.

- Market Reality: The current cost of lean ground beef alone is approximately $7.00–$9.00 per pound.
- The Math: If Plaintiff were to consume *only* one pound of beef per day (a basic protein requirement) and *nothing else*—no vegetables, no starch, no milk, no oil, no spices—the cost would be roughly $270.00 per month ($9.00 x 30 days).
- Adding even minimal necessities—milk ($4.00/gallon), eggs, cooking oil, and basic produce—immediately pushes the cost of a bare-survival diet well beyond $400–$500 per month.

**2. Evidence of Actual Spending (Exhibit B)**

Plaintiff attaches Exhibit B, a summary of receipts from Walmart and Target for the first 13 days of January 2026 alone.

- Total Spent (Jan 1–13): $413.06
- Items Purchased: Frozen chicken, ground beef, milk, eggs, fruit, and salad kits.
- Conclusion: These are basic staples, not luxuries. The fact that basic sustenance costs $400 for *two weeks* proves that a $1,200/month estimate for food and household

consumables is an accurate reflection of market prices, not "discretionary" waste.

3. Involuntary Loss of Cooking Infrastructure (Judicial Notice)

The Court must also take judicial notice of facts within its own docket that explain why Plaintiff's food costs may exceed a hypothetical "home-cooked" budget. In Jensen v. Arizona, State of, Case No. 4:25-cv-00464-JGZ, the record reflects that in June 2025, Plaintiff was unlawfully evicted by Sigrid Shickling. During this event, Plaintiff lost possession of virtually all personal property, including essential cooking utensils, pots, pans, and appliances. Without the infrastructure to prepare raw ingredients from scratch, Plaintiff has been forced to rely on pre-prepared or easily consumable foods, which naturally carry a higher market cost. This is not a "discretionary" lifestyle choice; it is a direct financial consequence of the very injuries Plaintiff is litigating before this Court. To penalize Plaintiff for the high cost of survival food, when his ability to cook was stripped from him, is manifestly unjust.

## C. Manifest Error: Incorrect Finding of "No Debt" (Judicial Notice)

The Court's Order states that Plaintiff "lists no debts." (Doc. 16 at 2). This finding is demonstrably incorrect based on the Court's own records. In Jensen v. Navy Federal Credit Union, Case No. 4:25-cv-00460-JGZ—a matter presided over by this very Court—the Court has previously acknowledged Plaintiff's debt of approximately $7,000.00 owed to Navy Federal Credit Union. Ignoring this significant existing liability, of which the Court has actual knowledge, constitutes manifest error and paints a misleadingly optimistic picture of Plaintiff's solvency.

## D. Manifest Error: Violation of Disability Protections in Federal Programs

The Court's order implies that Plaintiff must alter his food habits and diet to afford the filing fee. However, Plaintiff's dietary choices and reliance on specific food sources are not mere preferences but are inextricably linked to his disabilities and the continuation of a diet

required for his health and stability.

The *In Forma Pauperis* statute creates a federal program designed to ensure access to the courts. Under Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act, federal programs cannot deny benefits or access to qualified individuals with disabilities. By categorizing necessary, disability-related dietary expenses as "discretionary" and requiring Plaintiff to cut them to pay fees, the Court is effectively conditioning access to the judicial system on Plaintiff abandoning his required health regimen. This constitutes a violation of the Restructuring Acts and disability laws which mandate that federal programs must accommodate, not penalize, the realities of living with a disability. The "austerity" demanded by the Court would force Plaintiff to choose between his physical health and his legal rights, a choice no non-disabled litigant is forced to make.

### E. Manifest Error: Mischaracterization of Mental Health Needs (Social Isolation)

Further, the Court's implicit suggestion that Plaintiff eliminate "eating out" fails to account for the impact of social isolation on mental health disabilities. For Plaintiff, whose disability carries a high risk of isolation, "eating out" is not a culinary luxury; it is a necessary social activity that ensures community presence and interaction.

Isolation is a well-documented exacerbator of mental health conditions. By financially mandating that Plaintiff retreat to his home to consume the cheapest possible calories in solitude, the Court is effectively ordering Plaintiff's social segregation. The "necessities of life" include not just physical sustenance, but the maintenance of basic mental health and social functioning. The Court must recognize that for individuals with disabilities, integration into the community—even through simple acts like dining in public—is a protected therapeutic need, not "discretionary" entertainment.

**F. Cumulative Financial Burden**

This Court presides over all the following cases:

- 4:25-cv-00239-JGZ
- 4:25-cv-00240-JGZ
- 4:25-cv-00238-JGZ
- 4:25-cv-00241-JGZ
- 4:25-cv-00246-JGZ
- 4:25-cv-00423-JGZ
- 4:25-cv-00434-JGZ
- 4:25-cv-00600-JGZ
- 4:25-cv-00460-JGZ
- 4:25-cv-00464-JGZ
- 4:25-cv-00496-JGZ
- 2:25-cv-03378-DJH
- 4:25-cv-00526-JGZ

The cumulative filing fees for these matters would exceed $5,000.00. This represents a financial burden no person could afford on the represented SSDI income.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. **Grant** this Motion for Reconsideration based on new financial liabilities and factual evidence of necessary living costs;
2. **Vacate** the Order (Doc. 16) requiring payment of fees; and
3. **Grant** Plaintiff's Application to Proceed *In Forma Pauperis*.

Respectfully submitted this 13th day of January, 2026.

/s/ Jason Adam Jensen

Jason Adam Jensen

Plaintiff Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2026, I electronically filed the foregoing Motion with the

Clerk of the Court using the CM/ECF system.

/s/ Jason Adam Jensen

Jason Adam Jensen

**CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE**

I, Jason Adam Jensen, certify that Artificial Intelligence was used in the preparation of this

document. I have reviewed and verified the accuracy and appropriateness of the

AI-generated content and take full responsibility for it as if it were my own work, in

accordance with FRCP 11 and all applicable Local Rules. This system is designed to take

evidence uploaded, statements made, and claims alleged to draft a legal document on point

based on the regulatory documents for universal access to the law.

This document was drafted or prepared with the assistance of the District of Arizona

Playground (Gemini 2.0 Flash) system operating under a framework with a functional

description located at https://github.com/TemperedEnterprises/DistrictOfArizonaAIRegulatory.

The use of this system to draft this document is grounded in my own instructions and intent.

/s/ Jason Adam Jensen

Jason Adam Jensen